# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

JEFFREY LUFFMAN,

                                                Plaintiff,

    v.                                                     7:12-CV-317
                                                                (NAM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                                Defendant.

_____

LAWRENCE D. HASSELER, ESQ., for Plaintiff
KATRINA M. LEDERER, ESQ., Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I. PROCEDURAL HISTORY

Plaintiff "protectively filed"[1] application for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") on February 12, 2009, alleging disability beginning September 28, 2007, resulting from a shoulder injury, degenerative disc disease, and stomach ulcers. (Administrative Transcript ("T") 103, 107). Plaintiff's application was initially denied on May 8, 2009, and plaintiff

---

[1] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. § 404.630. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

requested a hearing. (T. 46, 56). Plaintiff appeared and testified before Administrative Law Judge ("ALJ"), Elizabeth W. Koennecke on April 7, 2010. (T. 25–45). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 17, 2012. (T. 1–5).

## II. APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an

2

> impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the

3

decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### III. FACTS

Plaintiff's counsel has extensively discussed the medical and vocational evidence in this case, and defense counsel incorporated the statement of facts in the ALJ's decision. (Pl.'s Br. at 1–4; Def.'s Br. at 1). This court will adopt the facts as discussed by plaintiff's counsel, together with the facts as stated in the ALJ's decision, with any exceptions as noted in the following discussion.

### IV. THE ALJ'S DECISION

The ALJ found that plaintiff had the following severe impairments: arthritis in his right shoulder and degenerative disc disease of the lumbar spine. (T. 15). The

ALJ found that plaintiff's adjustment disorder and stomach ulcers were not severe impairments. (T. 16). The ALJ considered plaintiff's impairments and found that they did not rise to the level of severity necessary to qualify as a listed impairment, specifically Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). (T. 17).

The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform a full range of light work, and that while plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (T. 17–18). The ALJ accorded great weight to a functional capacity evaluation performed in April 2009. (T. 18). The ALJ accorded some weight to the opinions of plaintiff's chiropractor and doctor, as they were not function-by-function assessments, but provided some insight to plaintiff's abilities. (*Id.*). The ALJ accorded little weight to the opinion of consultative examiner Dr. Toor, because it appeared that Dr. Toor based his opinion on plaintiff's false report that he had a herniated disc. (T. 18–19).

The ALJ considered plaintiff's past work, and found that plaintiff could not perform his past relevant work as a farm worker, furniture mover, and delivery driver. (T. 19). Because the ALJ found that plaintiff had the RFC to perform a full range of light work, the ALJ concluded that plaintiff was not disabled under the Social Security Act. (T. 20).

## V. **PLAINTIFF'S CONTENTIONS**

Plaintiff makes four arguments in support of reversal of the Commissioner's

determination:

    (1)    The ALJ failed to properly evaluate plaintiff's alleged mental impairment. (Pl.'s Br. at 9–11, Point II).

    (2)    The ALJ's RFC determination is not supported by substantial evidence. (Pl.'s Br. at 7–9, 11–13, Points I, III).

    (3)    The ALJ failed to properly assess plaintiff's subjective allegations of pain and disabling symptoms. (Pl.'s Br. at 13–15, Point IV).

    (4)    The ALJ's finding that there is significant work that plaintiff could perform is not supported by substantial evidence. (Pl.'s Br. at 15, Point V).

Defendant argues that the ALJ's findings are supported by substantial evidence, and that this court should affirm the findings of the Commissioner. For the following reasons, this court concludes that the ALJ's determination is supported by substantial evidence and will recommend dismissal of the complaint.

## VI. DISCUSSION

### A. Plaintiff's Mental Impairment

#### 1. The Special Technique

The regulations relating to mental impairments "require application of a special technique at the second and third steps of the five-step framework." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). The reviewing authority first determines if the claimant has a "medically determinable mental impairment." *Id.* at 266 (quoting 20 C.F.R. § 404.1520a(b)(1)). The reviewer then considers the degree of functional limitation resulting from any medically determinable impairments as they pertain to four broad functional areas. *Id.* at 266 (quoting 20 C.F.R. § 404.1520a(b)(2)). These functional areas are: activities of daily living, social

functioning, concentration, persistence or pace, and episodes of decompensation. *Id.* (citing 20 C.F.R. § 1520a(c)(3)).

### 2. Application

The ALJ considered plaintiff's adjustment disorder, and noted that plaintiff did not allege disability due to the condition, did not seek any treatment for psychiatric symptoms, and that the record did not suggest the condition was expected to last for 12 consecutive months. (T. 16). As part of an investigation of allegations into plaintiff using excessive force against his son by the Lewis County Department of Social Services, Licensed Mental Health Counselor Debbie Simpson completed an Initial Assessment Outline on July 31, 2009. (T. 361–69). Counselor Simpson stated that plaintiff did not feel the need to be in treatment, and that the incident when plaintiff struck his son was the only time something like that had occurred. (T. 361). Plaintiff told Counselor Simpson that he only planned to attend therapy if the Department of Social Services would cover any charges. (*Id.*).

Plaintiff met with psychiatrist Thomas Keller, M.D., on August 25, 2009. (T. 346). Dr. Keller diagnosed plaintiff with "adjustment disorder, mixed" and "mood disorder, secondary to medical problem." (T. 353). Dr. Keller assigned plaintiff a GAF score of 38,[2] noting plaintiff's Affect and Mood as "Angry" and "Irritable," and indicating that plaintiff had problems with his primary support group, social

---

[2] The Global Assessment of Functioning Scale (GAF) is a 100 point scale, and 31–40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV-TR at 32–34.

7

environment, education, economics, occupation, and the legal system. (T. 351, 353). The goal of plaintiff's treatment plan was to "achieve a reasonable level of family connectedness and harmony where members support, help, and are concerned for each other." (T. 360). Plaintiff's first review date was set for November 2009. (*See* T. 358, 360).

On November 25, 2009, Counselor Simpson assigned plaintiff a GAF score of 40, and noted that plaintiff and his wife had "improved some issues with disciplining children appropriately" and that plaintiff "enjoys taking his son hunting." (T. 356–57). Dr. Keller signed off on the report on December 8, 2009. (T. 357). On February 24, 2010, Counselor Debbie Simpson assigned plaintiff a GAF score of 38, and noted that plaintiff was "discouraged" and "angry about his initial injury." (T. 355). Plaintiff was never prescribed any medications by Dr. Keller, but had scheduled follow-up appointments every three months, which focused on his progress in appropriately disciplining his children. (*See* T. 346–71).

The medical records from Carthage Area Behavioral Health Center indicate that plaintiff received treatment only because he was referred there by the Department of Social Services, and that the main thrust of plaintiff's treatment was improving his relationships with his family members. (*See* T. 346–71). These records do not indicate that plaintiff's issues affected plaintiff's ability to perform work-related activities, but rather show plaintiff's one-time inappropriate reaction to his frustration with problems related to his injury, loss of work, and financial issues. The ALJ considered the only evidence of a mental impairment for plaintiff, and appropriately concluded that it did not meet the durational requirement to be considered a severe

8

medically determinable impairment. Thus, it was not necessary for the ALJ to apply the special technique for mental impairments. *See* C.F.R. § 404.1520a(b).

### B. RFC Determination

#### 1. General Legal Standard for RFC

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120, 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7).

#### 2. Substantial Evidence

The law is clear that in supporting his decision with substantial evidence, the ALJ cannot pick and choose only the parts of the record that support his determination, without affording consideration to the evidence supporting plaintiff's

9

claim. *Credle v. Astrue*, No. 10-CV-5624, 2012 WL 4174889, at *17, (E.D.N.Y. Sept. 19, 2012) (citing *Stewart v. Astrue*, No. 10-CV-3032, 2012 WL314867 (E.D.N.Y. Feb. 1, 2012)). The Commissioner considers data provided by physicians, but draws his own conclusions as to whether the data supports a finding of disability. *Id.* (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). To the extent that those reports are inconsistent, conflicts in the evidence are for the ALJ to resolve. *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). The ALJ need not reconcile every shred of evidence in support of his decision. *Barringer v. Commissioner of Soc. Sec.*, 358 F. Supp. 2d 67, 78–79 (N.D.N.Y. 2005) (citations omitted). The ultimate determination of whether a plaintiff is disabled or "unable to work" is reserved for the Commissioner. *Credle v. Astrue*, at *17 (citing 20 C.F.R. § 404.1527(d)).

### 3. Application

Plaintiff's counsel argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not properly consider the treating sources' opinions that plaintiff could not perform the functions required for light work, and failed to properly consider the limitations caused by plaintiff's non-exertional impairments. Defendant argues that the ALJ properly analyzed the medical evidence, and the RFC determination was supported by substantial evidence.

The ALJ considered the opinions of Dr. Huang and Dr. Powell, both of North Country Orthopedics. (T. 18). Dr. Huang generally focused on plaintiff's lower back issues, and Dr. Powell focused on plaintiff's right shoulder issues. On February 8, 2008, Dr. Huang stated that "given [plaintiff's] objective findings plus his duration of

being out of work, I think it is unlikely for him to be able to return to his prior position." (T. 243). An MRI on September 5, 2007, had revealed "minimal degenerative changes," " minimal exaggerated lumbar lordosis in appearance," and "spinal canal and neural foramina are patent in all visualized levels." (T. 249).

On March 24, 2008, Dr. Huang also stated that plaintiff's disability related to his lumbar spine was "partial" for workers' compensation purposes. (T. 245). Plaintiff again requested to continue his medication as it was prescribed, renew physical therapy, and stated that "the pain is not at the intensity which I need to have the shots." (*Id.*). Plaintiff had tried epidural injections in January 2008, and reported that they had helped "quite a bit." (T. 243).

On October 3, 2008, Dr. Huang discovered a tender nodule on plaintiff's lower back and ordered an MRI, which revealed minimal degenerative disc changes, minimal diffuse bulging discs at L3–4 and L4–5, and no evidence of spinal stenosis. (T. 259–60, 262). Plaintiff underwent an EMG/nerve conduction study of his lumbar spine on February 4, 2009, the results of which were "nearly normal," and Dr. Huang found that the abnormal sensory nerve conduction study results were likely due to technical difficulties resulting from plaintiff's obesity. (T. 268–71, 273–76).

On March 4, 2009, Dr. Huang examined plaintiff and found "maybe slight give way with bilateral knee extension," and "give way bilateral great toe dorsiflexion possibly worse on the right" when he manually tested muscles representing each of the bilateral L2–S1 myotomes. (T. 303). Dr. Huang adjusted plaintiff's medication after discussing options. (*Id.*). One month later, on April 7, 2009, Dr. Huang found plaintiff's strength "probably 5/5 today except for give way with right great toe

11

dorsiflexion" for the muscles representing each of the bilateral L2–S1 myotomes. (T. 304). Dr. Huang found similar results on May 7, 2009. (*See* T. 305). On February 15, 2010, Dr. Huang tested selected muscles of the L2–S1 mytomes and found "give way with right knee extension and right great toe dorsiflexion in certain positions." (T. 314). Dr. Huang prescribed a cane to reduce plaintiff's fall risk, and adjusted his medications. (*Id.*).

Plaintiff underwent open rotator cuff repair and distal clavicle excision by Dr. Powell on March 25, 2008. (T. 245, 255–56). Dr. Powell told plaintiff that his right shoulder would not be "good as new" and he would "likely have some loss of use" after the surgery. (T. 253).

On June 23, 2008, Dr. Powell noted that plaintiff had been out of therapy for three to four weeks due to a problem with Workers' Compensation approval, and that he had lost some external rotation in his shoulder. (T. 257). On July 23, 2008, Dr. Powell noted plaintiff's continuing complaint of back pain, and also stated that he told plaintiff that he should pursue vocational rehabilitation and consider not returning to his old work of moving furniture. (T. 258).

After an MRI ruled out a new tear in plaintiff's right shoulder and revealed tendon inflammation, Dr. Powell concluded on November 20, 2008, that plaintiff needed to "go slow" with therapy. (T. 261). On December 23, 2008, Dr. Powell stated that plaintiff was still having "some trouble" with his right shoulder, but that plaintiff "actually has fairly good active range of motion, passive range of motion." (T. 264).

Dr. Powell concluded on February 25, 2009, that conservative treatment of

plaintiff's shoulder had failed, resulting in some limitation in range of motion and some tenderness. (T. 277). Dr. Powell again recommended vocational rehabilitation and stated that he thought plaintiff would be able to drive a tractor trailer, although he would likely have trouble if he had to load it himself. (*Id.*, T. 302). Dr. Powell also recommended that plaintiff get a functional capacity evaluation to "mark his impairment rating." (T. 302).

On April 7, 2009, plaintiff received a Functional Capacity Evaluation from Physical Therapist ("PT") Wendy Alford-Tousley. (T. 278–82). The test lasted approximately two and one-half hours, and PT Alford-Tousely stated that "valid effort was given and that the values documented are a true representation of [plaintiff's] present functional level." (T. 278; *see also* T. 280). PT Alford-Tousely concluded that plaintiff retained the ability to perform tasks within the light category as listed in the U.S. Department of Labor Dictionary of Occupational Titles, with a maximum effort lift of nineteen pounds. (T. 278). *See also* 20 C.F.R. § 404.1567(b). On May 11, 2009, Dr. Powell stated that as to plaintiff's shoulder, he had "permanent partial impairment there, light duty only," and he recommended plaintiff seek vocational rehabilitation through VESID.[3] (T. 306).

The ALJ noted that neither Dr. Huang nor Dr. Porter provided a function-by-function assessment, but gave their opinions some weight. (T. 18). Both doctors and plaintiff's physical therapist agreed that plaintiff was unable to return to his previous

---

[3] Vocational and Educational Services for Individuals with Disabilities (now known as Adult Career and Continuing Education Services - Vocational Rehabilitation, or ACCES-VR) is a program through the New York State Department of Education that assists individuals with disabilities to obtain and maintain employment. http://www.acces.nysed.gov/vr/apply_for_services_apply.htm

work as a furniture mover. However, neither Dr. Huang nor Dr. Porter indicate in their reports that plaintiff was unable to perform a full range of light work. Dr. Huang recorded plaintiff's repeated allegations of pain, and after discussing various treatment options, stated that plaintiff would opt to continue with prescription medication and intermittent physical therapy. (T. 303, 304, 305, 307, 309, 310, 311, 312, 313, 314, 323, 324, 325, 327, 329, 330, 331, 332, 333, 334, 376).

Plaintiff argues that PT Alford-Tousely's opinion should not have been accorded great weight because as a physical therapist, she is not an acceptable medical source under the regulations. (Pl.'s Br. 8). However, PT Alford-Tousely did not diagnose plaintiff with any particular condition, but she rather evaluated the severity of plaintiff's impairments and how it affected his ability to perform work-related activities. This is consistent with the regulations discussing "Medical and other evidence of your impairment(s)," which state that medical doctors are sources who can provide evidence to establish an impairment, and therapists are "Other sources" whose opinions can help show the severity of an established impairment and how it affects one's ability to work. 20 C.F.R. § 404.1513(a), (d). Thus, the ALJ was entitled to rely on the physical therapist's assessment of plaintiff's functional limitations.

### C. Credibility
#### 1. Legal Standards

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v.*

14

*Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1997 U.S. Dist. LEXIS 22099, at *14, (N.D.N.Y. September 16, 1997), *report-recommendation adopted*, 1998 U.S. Dist. LEXIS 2751, (N.D.N.Y. March 3, 1998), 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors

15

concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3).

The ALJ cannot pick and choose only evidence that supports his finding, and must consider all the evidence of record. *Twyne v. Barnhart*, No. 01 Civ. 2264, 2003 WL 22299198, at *12 (S.D.N.Y. Oct. 7, 2003) (citation omitted). However, the law is also well-settled that, to the extent that reports are inconsistent, conflicts in the evidence are for the ALJ to resolve. *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Additionally, the ALJ need not reconcile every shred of evidence in support of his decision. *Barringer v. Commissioner of Soc. Sec.*, 358 F. Supp. 2d 67, 78–79 (N.D.N.Y. 2005) (citations omitted).

### 2. Application

Plaintiff's counsel argues that the ALJ failed to properly assess plaintiff's credibility by failing to adequately evaluate plaintiff's subjective complaints. Defendant argues that the ALJ appropriately evaluated plaintiff's complaints in light of the medical evidence.

The ALJ noted that while the functional capacity evaluation was deemed accurate and valid, there was some evidence of symptom exaggeration and poor effort. (T. 18). PT Alford-Tousley stated that plaintiff demonstrated an invalid effort on four of twenty-four indicators of test validity, an equivocal effort on 3 of the twenty-four indicators, and justified attempts on three of the twenty-four indicators. (T. 278). PT Alford-Tousley also stated that plaintiff scored "equivocal" on the Symptom Exaggeration and Inappropriate Illness profiles and scored "good effort" on the

16

Validity Profile. (T. 280). While these results were within the acceptable range to deem the results of the Functional Capacity Evaluation valid, the ALJ considered this information when evaluating plaintiff's credibility.

Additional evidence supports the ALJ's credibility determination. Plaintiff indicated on his application for benefits that he spent one and one-half hours daily helping his wife prepare meals, that he was able to use a riding lawn mower, go outside daily, drive a car to destinations up to an hour away, and go shopping for up to three hours at a time. (T. 117–21). He further stated that his limitations had significantly reduced, but not completely prevented him from hunting, fishing, and playing sports with his children. (*Id.*). Plaintiff reported to his mental health counselor Debbie Simpson that he enjoyed taking his son hunting, and that he watched television at home, mowed the lawn, and had been camping a "few times." (T. 356, 365). As discussed above, substantial evidence supports the ALJ's determination that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. The ALJ's decision that plaintiff was not disabled under the Social Security regulations should be affirmed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED,** and the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Date: March 14, 2013

*[signature: Andrew T. Baxter]*

Hon. Andrew T. Baxter
U.S. Magistrate Judge